UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON BEBAULT et al., <br><br>　　　　Plaintiffs, <br><br>　v. <br><br>DMG MORI USA, INC., <br><br>　　　　Defendant. | Case No. 18-cv-02373-JD <br><br>**ORDER RE CLASS CERTIFICATION** <br>Re: Dkt. No. 68 |

Named plaintiffs Brandon Bebault and Steven Arnold ask for certification of a national class for claims under the Fair Credit Reporting Act ("FCRA") against DMG Mori USA, Inc. ("DMG"). Dkt. No. 68. The Court certifies a class consisting of all persons residing in the United States for whom DMG procured or caused to be procured a consumer report for employment purposes on or after April 19, 2016. Plaintiff Arnold will be the class representative.

## BACKGROUND

The salient facts are undisputed. DMG is an Illinois corporation that makes cutting machine tools. Bebault and Arnold are former employees of DMG. During the employment application process, DMG gave them a one-page form authorizing DMG to obtain a consumer report as part of a pre-employment background check. Dkt. No. 65 (second amended complaint) ¶ 15. The form contained the disclosures and written authorization that the FCRA requires before a consumer report can be obtained by a prospective employer. *Id.* ¶ 15 and Exh. 1; Dkt. No. 68-1 at 3. It also contained, in the same page, additional information about consumer reports specific to the state laws of California, New York, Maine, Minnesota, Oklahoma, Oregon and Washington. Dkt. 68-1 at 3. DMG does not dispute that it used this form for all job applicants during the relevant time period.

Plaintiffs contend that the inclusion of the state-law provisions in the form violated Congress's mandate that the document consist "solely" of the FCRA disclosures on a standalone basis, without any extraneous information. *See* 15 U.S.C. § 1681b(b)(2)(A)(i). Plaintiffs expressly allege that they were "confused by the extraneous information" in DMG's disclosure. Dkt. No. 65 ¶ 15. They sued DMG on a single claim under the FCRA, which the Court sustained over DMG's motion to dismiss. Dkt. No. 38.

Plaintiffs seek certification under Federal Rule of Civil Procedure 23(b)(3) of a class of all "natural persons residing in the United States (including all territories and other political subdivisions of the United States) who were the subject [of] a consumer report that was procured by Defendant (or that Defendant caused to be procured) within five years of the filing of this Compliant through the date of final judgment." Dkt. No. 68-1 at 8.

## DISCUSSION

### I. LEGAL STANDARDS

The standards governing a motion for certification are well-settled. *See generally Brickman v. Fitbit, Inc.*, No. 15-cv-02077-JD, 2017 WL 5569827, at *2-3 (N.D. Cal. Nov. 20, 2017). As the parties seeking certification, plaintiffs bear the burden of showing that the requirements of Federal Rule of Civil Procedure 23 are met. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012). The proposed class action must satisfy all four requirements of Rule 23(a), and at least one of the sub-sections of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.), *amended by* 273 F.3d 1266 (9th Cir. 2001).

Rule 23(a) imposes four prerequisites. The class must be "so numerous that joinder of all members is impracticable" (numerosity). There must be "questions of law or fact common to the class" (commonality). The claims or defenses of the named plaintiffs must be "typical of the claims or defenses of the class" (typicality). And the named parties must show that they "will fairly and adequately protect the interests of the class" (adequacy). Fed. R. Civ. P. 23(a)(1)-(4).

To obtain certification of a Rule 23(b)(3) class, plaintiffs must also must show that "questions of law or fact common to class members predominate over any questions affecting only

2

individual members" (predominance) and that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy" (superiority). Fed. R. Civ. P. 23(b)(3).

The Court's "class-certification analysis must be rigorous and may entail some overlap with the merits of the plaintiff's underlying claim." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 465-66 (2013) (internal quotations and citations omitted). "That is so because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Comcast*, 569 U.S. at 33-34 (internal quotations and citations omitted). These principles apply to the Rule 23(a) and 23(b) analysis alike. *Id.* at 34.

The rigorous analysis, however, has its limits. "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent -- but only to the extent -- that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen*, 586 U.S. at 466. The class certification procedure is decidedly not an alternative form of summary judgment or an occasion to hold a mini-trial on the merits. *Alcantar v. Hobart Service*, 800 F.3d 1047, 1053 (9th Cir. 2015). The goal under Rule 23 is "to select the metho[d] best suited to adjudication of the controversy fairly and efficiently." *Amgen*, 568 U.S. at 460 (internal quotations omitted) (modification in original). That means deciding whether efficiency and the interests of justice are best served by having the named plaintiffs go forward to the merits as individuals or on behalf of a class as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)).

The decision of whether to certify a class is entrusted to the sound discretion of the district court. *Zinser*, 253 F.3d at 1186.

**II.    STANDING AND LIABILITY**

DMG broadly objects to certification on the grounds that plaintiffs "will be unable to establish either standing or liability." Dkt. No. 71 at 1. This is a surprising proposition because

3

both points have been expressly refuted in recent cases. DMG says that plaintiffs lack standing under *Spokeo, Inc. v. Robins*, ___ U.S. ___, 136 S. Ct. 1540 (2016) because a violation of the FCRA's standalone disclosure requirement is a "bare" procedural violation that cannot result in cognizable harm. Dkt. No. 71 at 1-3. But the Ninth Circuit has expressly rejected that argument, and concluded that an improper disclosure under Section 1681b(b)(2)(A)(i) causes a concrete injury sufficient to establish Article III standing. *Syed v. M-I, LLC*, 853 F.3d 492, 499-500 (9th Cir. 2017).

With respect to liability, the Ninth Circuit "reads the FCRA as mandating that a disclosure form contain nothing more than the disclosure itself," without any "extraneous information" even if it might be "closely related" to the FCRA. *Walker v. Fred Meyer, Inc.*, 953 F.3d 1082, 1087-88 (9th Cir. 2020) (internal citation omitted).[1] The circuit has specifically held, on facts indistinguishable from those here, that "a prospective employer violates FCRA's standalone document requirement by including extraneous information relating to various state disclosure requirements in that disclosure." *Gilberg v. California Check Cashing Stores, LLC*, 913 F.3d 1169, 1171 (9th Cir. 2019); *see also Walker*, 953 F.3d at 1088 ("In light of *Gilberg*, a disclosure form violates the FCRA's standalone requirement if it contains any extraneous information beyond the disclosure required by the FCRA."). The Court denied DMG's motion to dismiss for exactly this reason. Dkt. No. 38. There is no room under governing case law for DMG to suggest that plaintiffs' claim is an overreach or otherwise questionable under the FCRA.

### III.    CLASS DEFINITION AND REPRESENTATIVE

DMG also challenges Bebault's role in the litigation. Whether presented as a question of standing, or as an issue of ascertainability or other Rule 23 factor, as DMG does at various points, the heart of the objection is that Bebault waited too long to sue, with the consequence that he cannot be a named representative and that the class period cannot start any earlier than two years before the original complaint was filed. Dkt. No. 71 at 14-18. DMG makes no similar objections to plaintiff Arnold, and in effect acknowledges that he is a suitable representative. *Id.* at 10.

---

[1] The FCRA has an exception that permits the consumer's authorization to be included in the disclosure form. *See* 15 U.S.C. § 1681b(b)(2)(A)(ii).

1 Bebault's claim is untimely. The FCRA has a two-year statute of limitations, which begins
2 to run as of "the date of the discovery by the plaintiff of the violation that is the basis for such
3 liability." 15 U.S.C. § 1681p(1). DMG suggests that the discovery date should be the day when
4 plaintiffs received and acknowledged a defective disclosure notice, *see* Dkt. No. 71 at 9, but that
5 argument was again expressly rejected in *Syed*. An employer does not violate the FCRA by
6 providing an improper disclosure. *Syed*, 853 F.3d at 506. "The employer violates the FCRA only
7 where, after violating its disclosure procedures, it 'procure[s] or cause[s] to be procured' a
8 consumer report about the job applicant." *Id*. (citing 15 U.S.C. §1681b(b)(2)(A)(i)) (modifications
9 in original).

10 Consequently, the relevant inquiry is when did Bebault discover that DMG had procured a
11 report about him. The record demonstrates that DMG's outside vendors responsible for handling
12 its background checks and consumer reports mailed a copy of Bebault's report to him on October
13 28, 2015. *See* Dkt. No. 71-1 Exh. 5 ¶ 6 (Hertz Decl.). This was the report DMG procured under
14 the challenged disclosure notice. *Id*. ¶¶ 4-5; *see also* Dkt. No. 71-1 Exh. 4 ¶¶ 3-8 (Rau Decl.).
15 Under a rule familiar to all first-year law students, and beloved by bar examiners, there is a
16 rebuttable presumption that Bebault received his consumer report three days after it was mailed.
17 *See Dandino, Inc. v. U.S. Dept. of Transp.*, 729 F.3d 917, 921 (9th Cir. 2013). Consequently, the
18 FCRA violation accrued, and the limitations clock started ticking, on approximately October 31,
19 2015, when Bebault became aware the DMG had procured his report on the basis of an improper
20 FCRA disclosure. Bebault had until approximately November 1, 2017, to sue on the violation.

21 He missed that deadline, and did not file this lawsuit until April 19, 2018. Dkt. No. 1.
22 Bebault does not dispute or challenge DMG's evidence establishing the key dates and events for
23 limitations purposes, nor does he deny getting the report in October 2015 or attempt to rebut the
24 mail presumption. As a result, he cannot serve as a class representative.[2] Plaintiff Arnold will
25 serve in that capacity.

---

[2] Whether Bebault should be dismissed from the lawsuit is not a question currently before the Court.

1  In light of this record, the Court exercises its discretion to modify the proposed class definition. *See In re Facebook Biometric Information Privacy Litigation*, 326 F.R.D. 535, 543 (N.D. Cal. 2018), *aff'd sub nom. Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 937 (2020); *see also Armstrong v. Davis*, 275 F.3d 849, 871 n.28 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005). The putative class for the Rule 23 analysis will consist of all persons residing in the United States for whom DMG procured or caused to be procured a consumer report for employment purposes on or after April 19, 2016, which is two years before the date the original complaint was filed. It is appropriate to relate back the amended complaint that added Arnold as a named plaintiff to the original class action complaint because Arnold was part of the original proposed class, his claim arises from the same facts and conduct, and the relation back will not unfairly prejudice DMG. *See Immigrant Assistance Project of Los Angeles County v. INS*, 306 F.3d 842, 857 (9th Cir. 2002); *In re Syntex Corp. Securities Litigation*, 95 F.3d 922, 935-36 (9th Cir. 1996). DMG does not argue otherwise, and expressly advocated for a two-year class period. *See* Dkt. No. 71 at 16-18.

## IV. THE RULE 23(a) FACTORS

DMG made the Rule 23(a) analysis unduly burdensome by not mapping its arguments to the structure of the rule. The Court has corrected that as much as possible in the interest of clarity.

### A. Numerosity, Ascertainability and Adequacy

Plaintiffs state that the proposed class is sufficiently numerous since "thousands of potential job applicants were presented with the same two-page FCRA Disclosure/Authorization form at issue." Dkt. No. 68-1 at 8. DMG does not contest numerosity. Dkt. No. 71 at 4. This element is established.

DMG says that the proposed class is not adequately defined or reasonably ascertainable because it will include individuals "who have suffered no injury by reason of the alleged misconduct." Dkt. No. 71 at 5. This in effect recycles the standing argument discussed above, which is no more valid here under *Syed* than it was there. DMG's suggestion of a need for highly individualized inquires into whether each putative class member was "confused" by the disclosure

6

1  form, *id*. at 6-7, is also misdirected.  Nothing in the plain text of the FCRA indicates that an
2  actionable violation of the standalone disclosure rule turns on consumer confusion, and the FCRA
3  certainly does not exempt an improper disclosure from liability just because it might be easy to
4  read and understand.  To the extent consumer confusion was mentioned in *Syed*, the circuit court
5  had no trouble inferring it from the extraneous content in the FCRA disclosure.  *Syed*, 853 F.3d at
6  499; *see also Gilberg*, 913 F.3d at 1177 ("[T]he disclosure would confuse a reasonable reader
7  because it combines federal and state disclosures.").  The same inference goes here, and plaintiffs
8  have also expressly alleged that DMG's forms were inherently confusing.  Dkt. No. 65 ¶ 15.

9       DMG's argument further suffers from its failure to discuss or account for recent decisions
10 on ascertainability.  DMG makes no mention of *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121
11 (9th Cir. 2017), which extensively discussed ascertainability for Rule 23 purposes, or decisions
12 like *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1137 (9th Cir. 2016), which held that
13 "fortuitous non-injury to a subset of class members does not necessarily defeat certification of the
14 entire class, particularly as the district court is well situated to winnow out those non-injured
15 members at the damages phase of the litigation, or to refine the class definition."  DMG focused
16 instead on out-of-circuit cases of marginal utility here.  *See, e.g.*, Dkt. No. 71 at 5.

17      In any event, the class definition as modified by the Court adequately describes the
18 common characteristics of membership in a sufficiently definite way to feasibly determine who
19 the members are.  With respect to actually populating the class, plaintiffs have stated that members
20 can be readily identified by records within the possession or control of DMG, or its third-party
21 vendors.  *See* Dkt. No. 68-1 at 8-9.  DMG does not disagree.  It is also clear from the evidence
22 about the timeliness of Bebault's claim that DMG can determine when a potential class member
23 received a copy of the report it procured.

24      DMG does not address adequacy beyond the objections to Bebault previously discussed.
25 In the absence of any evidence or argument to the contrary, the Court finds that plaintiffs' counsel,
26 and named plaintiff Arnold, are competent to represent the class.

27
28

7

### B. Typicality

Typicality is intended to "assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). To satisfy this requirement, the named plaintiffs' claims need only be "reasonably coextensive with those of absent class members; they need not be substantially identical." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (internal citations and quotations omitted). Typicality may be found when other members have the same or similar injury as the named plaintiffs arising out of the same course of conduct. *Id.* Typicality should not be found, and a class should not be certified, in cases where other members would suffer because the named plaintiffs would be "preoccupied with defenses unique to" them. *Id.* (quoting *Hanon*, 976 F.2d at 508) (internal quotation omitted).

Typicality is readily established here. DMG does not contend that Arnold's claim is in any way atypical of the absent class members', and there is no evidence to suggest that Arnold will get caught up in litigation issues unique to him. *See* Dkt. No. 71 at 10. DMG also does not dispute that the challenged disclosure form was used for all prospective employees during the class period. Typicality is established.

### C. Commonality and Predominance

DMG's remaining objections to certification involve the overlapping factors of commonality under Rule 23(a)(2) and predominance under Rule 23(b)(3). These inquiries go to the heart of whether adjudication of the claims on a class basis would be fair, efficient and superior to individual prosecution.

The commonality requirement is satisfied when "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Because any competently crafted class complaint literally raises common questions," the Court's task is to look for a common contention "capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Alcantar*, 800 F.3d at 1052 (internal quotations and citations omitted). What matters is the "capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."

8

*Wal-Mart*, 564 U.S. at 350 (internal quotations omitted) (emphasis in original).

Rule 23(a)(2) does not demand total uniformity across a class. "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). Rule 23(a)(2) imposes a "'rigorous' commonality standard." *Levya v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013).

Rule 23(b)(3) requires that common questions of law or fact predominate over individual ones. The predominance inquiry asks whether "common questions present a significant aspect of the case and [if] they can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022 (internal quotations omitted); *see also Tyson Foods v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). Each element of a claim need not be susceptible to classwide proof, *Amgen*, 568 U.S. at 468-69, and the "important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *Torres*, 835 F.3d at 1134. Rule 23(b)(3) permits certification when "one or more of the central issues in the action are common to the class and can be said to predominate, . . . even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson*, 136 S. Ct. at 1045 (internal quotations omitted).

As the Court has discussed in other decisions, the line separating the commonality inquiry under Rule 23(a)(2) and the predominance assessment under Rule 23(b)(3) can be elusive. *See Ochoa v. McDonald's Corp.*, No. 14-cv-02098-JD, 2016 WL 3648550, at *5-6 (N.D. Cal. July 7, 2016). *Wal-Mart* emphasized the commonality inquiry, but the Supreme Court has also advised that "[i]f anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Comcast*, 569 U.S. at 34. Whatever the precise demarcation might be between the two inquiries, it is clear that commonality alone will not fulfill Rule 23(b)(3), and that the main concern under subsection (b)(3) "is the balance between individual and common issues." *In re*

9

*Hyundai and Kia Fuel Economy Litigation*, 881 F.3d 679, 691 (9th Cir. 2018) (internal quotations omitted), *rev'd on other grounds*, 926 F.3d 539 (9th Cir. 2019) (en banc); *see also Tyson*, 136 S. Ct. at 1045 (purpose of the Rule 23(b)(3) inquiry is to determine whether the proposed class is "sufficiently cohesive to warrant adjudication by representation") (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). As a practical matter, commonality and predominance can be assessed in tandem, with a careful eye toward ensuring that the specific requirements of each are fully satisfied. *See, e.g.*, *Just Film*, 847 F.3d at 1120-21.

Commonality and predominance are readily established by the record. Plaintiff Arnold and absent class members had consumer reports procured by DMG under the same disclosure form. The legality *vel non* of the disclosures and procurement is answerable in one fell swoop for the entire class. The definition of the class period as the two-year limitations period eliminates any worry that a material number of stale claims will be included in the class. DMG has also demonstrated that it has records capable of determining when a class member received a copy of his or her report. Damages are statutory and capable of classwide determination, as is the question of willfulness. *See Syed*, 853 F.3d at 504-06 (FCRA willfulness is question of law).

**D. Superiority**

The last remaining factor for class certification is superiority under Rule 23(b)(3), and specifically "the likely difficulties in managing a class action." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1126-28 (9th Cir. 2017). DMG again turns to out-of-circuit (and outdated) cases to say that manageability is doubtful because the potential statutory damages could be substantial. Dkt. No. 71 at 12-14. The point is not well taken. The possibility of sizable damages does not make a class action inherently unreasonable or unfair, and DMG has not demonstrated that an award of class-wide statutory damages would be inconsistent with legislative intent. Congress has authorized statutory damages, 15 U.S.C. § 1681n(a)(1), and has not precluded class treatment of FCRA actions. *See In re Facebook*, 326 F.R.D. at 548-49 (citing *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 722-23 (9th Cir. 2010)), *aff'd sub nom. Patel v. Facebook, Inc.*, 932 F.3d 1264, 1276 (9th Cir. 2019) ("Where neither the statutory language nor legislative history indicates that the legislature intended to place a cap on statutory damages, denying class certification on that

basis would 'subvert [legislative] intent.'") (quoting *Bateman*, 623 F.3d at 722-23) (modification in original). The Court also retains discretion to reduce a damages award, if warranted, to comport with due process. *In re Facebook*, 326 F.R.D at 548-49 (citing *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1309 (9th Cir. 1990)).

Contrary to DMG's contention, Dkt. No. 71 at 12, the amount of damages authorized under FCRA is not so much as to make individual actions superior to class treatment of the claims. Plaintiffs have elected to pursue statutory rather than actual damages, which cap out at $1,000 per violation, and attorney's fees. *See* Dkt. No. 65 ¶¶ 29-30; 15 U.S.C. §1681n. That is hardly a level of recovery that makes sense to pursue on an individual basis, particularly when potentially thousands of claimants could be eligible to sue. Requiring those claimants to file separate actions would bury the courts in a mountain of largely identical cases, and undoubtedly result in some claims not being pursued at all. Class treatment of the claims is more than warranted here.

## CONCLUSION

The Court certifies a class consisting of all persons residing in the United States for whom DMG procured or caused to be procured a consumer report for employment purposes on or after April 19, 2016. Plaintiff Arnold will be the class representative.

**IT IS SO ORDERED.**

Dated: April 29, 2020

JAMES DONATO
United States District Judge