UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEVEN ARNOLD, et al.,

    Plaintiffs,

v.

DMG MORI USA, INC.,

    Defendant.

Case No. 18-cv-02373-JD

**ORDER RE SUMMARY JUDGMENT**

Re: Dkt. Nos. 94, 100

Named plaintiffs Brandon Bebault and Steven Arnold sued their former employer, defendant DMG Mori USA, Inc. (DMG), for obtaining background reports on prospective employees with disclosure and authorization forms that violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.* Dkt. No. 78 (second amended complaint). The Court certified a class consisting of "all persons residing in the United States for whom DMG procured or caused to be procured a consumer report for employment purposes on or after April 19, 2016," with Arnold as the class representative. *Bebault v. DMG Mori USA, Inc.*, No. 18-CV-02373-JD, 2020 WL 2065646, at *1 (N.D. Cal. Apr. 29, 2020) (also available at Dkt. No. 75).[1]

Plaintiffs seek summary judgment on liability under the FCRA. Dkt. No. 94. DMG opposes summary judgment mainly on the ground that plaintiffs do not have a concrete injury in fact sufficient to establish Article III standing. Dkt. No. 95. It makes the same point in its own cross-motion for summary judgment, Dkt. No. 100, which in effect just repeats the opposition argument.

---

[1] The case was re-captioned at plaintiffs' request after the certification order was filed. *See* Dkt. No. 88.

1    Summary judgment on liability is granted in plaintiffs' favor.  It is denied for DMG's
2    motion.  The case is stayed and referred to a magistrate judge for a settlement conference on
3    damages.

## DISCUSSION

The Court has detailed the standards applicable to a motion for summary judgment in other orders.  *See, e.g.*, *Winding Creek Solar LLC v. Peevey*, 293 F. Supp. 3d 980, 988-89 (N.D. Cal. 2017), *aff'd*, 932 F.3d 861 (9th Cir. 2019).  These well-established standards apply in full here, and neither party contends otherwise.

The undisputed material facts are stated in the class certification order, *see Bebault*, 2020 WL 206546, at *1, and the parties' familiarity with the record is assumed.  In a nutshell, plaintiffs applied for jobs with DMG, which makes cutting machine tools, on or after April 19, 2016.  As part of the application process, DMG gave them background check disclosures that described their rights under the FCRA and, in the same document, related rights under California, Maine, Minnesota, New York, Oklahoma, Oregon, and Washington state laws.

Plaintiffs' sole claim in the case is that DMG's forms violated the FCRA.  To show this, they focus mainly on DMG's practice of combining FCRA and state law disclosures.  The parties agree that, under the FCRA, an employer must provide (i) a "clear and conspicuous" disclosure that a consumer report is being procured (ii) "in a document that consists solely of that disclosure" (the standalone document requirement), which (iii) the employee must authorize in writing.  15 U.S.C. §1681b(b)(2)(A) (Section 1681b(b)(2)(A)).  Plaintiffs seek statutory damages under the FCRA, which requires them to show that DMG's violations were "willful."  *See* 15 U.S.C. § 1681n(a)(1)(A); *Marino v. Ocwen Loan Servicing LLC*, 978 F.3d 669, 673 (9th Cir. 2020).

At multiple turns in the litigation, DMG has tried to get the case dismissed on the theory that plaintiffs did not suffer a concrete injury in fact for Article III standing purposes.  The Court denied these efforts because our circuit definitively rejected the same contention in *Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017), a case that is directly on point and leaves no room for reasonable disagreement.  *See Bebault*, 2020 WL 2065646, at *2-4.  *Syed* expressly concluded that

1    a plaintiff establishes a concrete injury and Article III standing by alleging an improper disclosure

2    under Section 1681b(b)(2)(A). *Syed*, 853 F.3d at 499-500.

3        While that would seem enough to have put the standing issue to rest, DMG raises the point

4    again on summary judgment on the basis of an unpublished memorandum in *Ruiz v. Shamrock*

5    *Foods Co.*, 804 F. App'x 657 (9th Cir. 2020), which was decided after the Court certified the class

6    in this case. *Ruiz* involved a class action under Section 1681b(b)(2)(A) and an FCRA disclosure

7    that contained several references to state law. *See* 804 F. App'x at 658. In a split decision with

8    one judge dissenting, the panel affirmed the district court's grant of summary judgment to the

9    employer because the plaintiffs did not "produce admissible evidence establishing a concrete

10   injury," namely that "they were confused by the inclusion of the references to state law" in the

11   disclosure form, and that they would not have signed the authorization if it were sufficiently clear.

12   *Id.* at 659.

13       That specific determination is the sole ground for DMG bringing up the standing point

14   again, and it is unavailing for several reasons. To start, DMG's cross-motion on this issue is in

15   effect an improper request for reconsideration by another name. DMG did not comply with the

16   requirements for seeking reconsideration. It did not seek permission to file for reconsideration in

17   advance, and did not identify a material change in the record or governing law that might warrant

18   reconsideration. *See* Civil L.R. 7-9. DMG implies that *Ruiz* is such a change in law, but an

19   unpublished memorandum is not a binding precedent for reconsideration purposes. *See* Ninth

20   Circuit Rule 36-3(a); *M2 Software, Inc. v. Madacy Ent.,* 421 F.3d 1073, 1086 (9th Cir. 2005).

21       DMG's reliance on *Ruiz* is also questionable substantively. Looming over DMG's position

22   is *Gilberg v. California Check Cashing Stores*, LLC, 913 F.3d 1169 (9th Cir. 2019). *Gilberg* built

23   on *Syed* and the plain language of Section 1681b(b)(2)(A) to conclude that when "a disclosure

24   form does not consist solely of the FCRA disclosure, it does not satisfy the standalone document

25   requirement." *Id*. at 1175. *Gilberg* reversed the district court's grant of summary judgment to the

26   employer on precisely this basis. The disclosure form there blended FCRA and state law

27   disclosures. *Gilberg* concluded that this would necessarily "confuse a reasonable reader because it

28   combines federal and state disclosures." *Id*. at 1177.

So too here. The disclosure form DMG gave to potential employees is identical in all material respects to the one that fell short of the standalone requirement in *Gilberg*. *Ruiz* did not mention *Gilberg*, or account for its holding, and DMG offers nothing on that score, either. On this basis alone, DMG's renewed attack on standing falls apart.

DMG's reading of *Ruiz* is also out of step with other Ninth Circuit decisions on injury and standing under the FCRA. DMG says that *Ruiz* requires extrinsic evidence of "actual concrete damages for each class member" resulting from non-compliant disclosures in order to demonstrate a concrete injury. Dkt. No. 100-1 at 2. But that is not consonant with governing law in our circuit, as the dissent in *Ruiz* demonstrated. *See Ruiz*, 804 F. App'x at 660 (N.R. Smith, J., dissenting). Several published circuit decisions have concluded that Section 1681b(b)(2)(A) protects substantive informational and privacy rights. *See, e.g.*, *Syed*, 853 F.3d at 499 (Section 1681b(b)(2)(A) "creates a right to information by requiring prospective employers to inform job applicants that they intend to procure their consumer reports as part of the employment application process," and "creates a right to privacy by enabling applicants to withhold permission to obtain the report from the prospective employer"); *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 490-91 (9th Cir. 2019) (discussing *Syed*, and holding that Section 1681b(b)(2)(A)'s disclosure requirements protect a substantive right to privacy in one's consumer credit report, as well as a substantive right to the information in the disclosure itself); *see also Gilberg*, 913 F.3d at 1175. An "invasion" of these interests occurs when a company fails to provide an FCRA-compliant disclosure and authorization form, which "confers standing." *Nayab*, 942 F.3d at 490; *see also Syed*, 853 F.3d at 499 (there is "a concrete injury when applicants are deprived of their ability to meaningfully authorize the credit check" by being presented with a defective FCRA disclosure). Consequently, providing a disclosure form with extraneous information violates substantive informational and privacy rights under the FCRA. These decisions did not require a separate showing of "actual damages," as DMG would have it, and the plain text of the FCRA certainly does not demand that.

In any event, *Ruiz* is distinguishable on the facts. The thrust of DMG's argument is that plaintiffs, like the ones in *Ruiz*, did not tender evidence of confusion from the faulty disclosures,

4

or a reluctance to sign them had they been clear. That is not a complete picture of the record here. In support of class certification, both named plaintiffs declared that they were "confused" about what they were signing, and that they might not have signed had they understood the forms. *See* Dkt. No. 68-9 ¶ 5 (Bebault declaration in support of renewed motion for class certification) ("Because my employment application contained multiple pages and multiple authorization forms, I was confused about exactly what I was signing and what I was providing authorization for. No one explained any of the authorization forms to me. If I had known what I was authorizing, I would not have signed the documents."); Dkt. No. 68-10 ¶ 5 (Arnold declaration in support of same) (making substantially similar statement); *see also* Dkt. No. 69-1 ¶ 5 (revised Arnold declaration). This is the kind of evidence that DMG says is required by *Ruiz*, and it is contained in the record before the Court.

As for liability, the undisputed facts amply establish that DMG violated the FCRA. DMG provided plaintiffs with a standardized disclosure and authorization form, which plaintiffs signed. *See* Dkt. No. 94-2 (Desai Decl.), Exh. G at ECF p. 2. In addition to the disclosures required by the FCRA, the form contained statements about the laws of several states. *See id.* The Ninth Circuit interprets the FCRA "'as mandating that a disclosure form contain nothing more than the disclosure itself,' without any 'extraneous information.'" *Bebault*, 2020 WL 2065646, at *2 (quoting *Walker v. Fred Meyer, Inc.*, 953 F.3d 1082, 1087-88 (9th Cir. 2020) (internal citation omitted)). As noted, the Ninth Circuit has held on "indistinguishable" facts that forms such as those used by DMG that contain "extraneous information relating to various state disclosure requirements in that disclosure" violate Section 1681(b)(2)(A)(i). *Id.* (quoting *Gilberg*, 913 F.3d at 1171).

DMG does not dispute that its initial form violated the FCRA. It tries to cabin the consequences of that by pointing to a revised form it used after the *Gilberg* decision, which it says omits the references to state law and otherwise complied with Section 1681(b)(2)(A). Dkt. No. 95 at 6. On this basis, DMG suggests that liability should be limited to the original form.

The revised form is an improvement, and is not flawed to the degree that plaintiffs contend. They take issue with the fact that the revised form includes this sentence: "[t]he scope of

1  this disclosure is all encompassing, however, allowing [DMG] to obtain from any outside
2  organization all manner of consumer reports throughout the course of your assignment or
3  employment to the extent permitted by law." Dkt. No. 94-1 at 7 (quoting Desai Decl., Exh. H at
4  ECF p. 2.) (brackets in original)." Plaintiffs note that *Gilberg* criticized similar language as
5  unclear, but it did so on the basis of a misplaced semicolon before "however" in the disclosures
6  used there, which changed the meaning of the sentence. *See Gilberg*, 913 F.3d at 1177. DMG
7  used a comma rather than a semicolon. This change made it clear that the disclosure in the revised
8  form was "all-encompassing" in the sense that DMG could obtain "all manner" of consumer
9  reports during the employee's employment, and plaintiffs have not shown that this text raises an
10  FCRA problem.

11  But the revised form violates the FCRA in other respects. That is because it contains
12  extraneous language stating that the signatory has "the right, upon written request made within a
13  reasonable time, to request whether a consumer report has been run about you and to request a
14  copy of your report." Desai Decl., Exh. H at ECF p. 2. Our circuit has concluded that
15  substantially similar language, even if presented "in good faith," is inconsistent with the
16  standalone document requirement in Section 1681(b)(2)(A)(i). *See Walker*, 953 F.3d at 1090-91.

17  The remaining question for summary judgment is whether DMG's violations may be
18  deemed willful. A company violates the FCRA "willfully" when it knows that its actions violate
19  the FCRA, or when it displays a "reckless disregard" for its requirements. *Safeco Ins. Co. of Am.*
20  *v. Burr*, 551 U.S. 47, 56-57 (2007). A violation of the FCRA is reckless as a matter of law if it
21  ignored an unambiguous requirement of the statute. *Syed*, 853 F.3d at 505 & n.7. Consequently,
22  because the FCRA unambiguously requires that a disclosure be provided in a standalone
23  document, a "prospective employer's violation of the FCRA is 'willful' when the employer
24  includes terms in addition to the disclosure." *Id.* at 496.

25  These principles make the issue of willfulness straightforward. DMG's original form
26  contained extraneous references to California, Maine, Minnesota, New York, Oklahoma, Oregon,
27  and Washington law on top of the FCRA disclosure and authorization. *See* Desai Decl., Exh. G at
28  ECF p. 2. This included information about the applicant's rights to inspect consumer reports

6

requested by DMG, to request information about DMG's secure recordkeeping practices, and to request a summary of the applicant's rights, *see id.*, among other information unrelated to disclosing that "a consumer report may be obtained for employment purposes," 15 U.S.C. § 1681b(b)(2)(A)(i). While omitting references to state law, the revised form contained unrelated information about applicants' rights to inspect documents. *See Walker*, 953 F.3d at 1091 (this "information cannot reasonably be deemed part of" the disclosure required by Section 1681b(b)(2)(A)(i), and so it contravenes the FCRA's "standalone disclosure requirement"). Consequently, DMG willfully violated the FCRA by including additional terms in its disclosures.

DMG again tries to reduce its exposure by saying that until *Gilberg* was published in 2019, no authority indicating that its original form failed to comply with the FCRA. But *Syed* rejected a substantially similar argument in 2017. *See Syed*, 853 F.3d at 504 ("Despite the apparent dearth of guidance on the issue" at relevant times, the "inclusion of a liability waiver in the statutorily mandated disclosure document comports with no reasonable interpretation of 15 U.S.C. § 1681b(b)(2)(A)."). DMG had the benefit of *Syed* by the time it issued its revised disclosure form in 2019, and so cannot claim that it was in the dark about its obligations under the FCRA.

## CONCLUSION

Summary judgment is granted in favor of plaintiffs on liability and willfulness. Plaintiffs did not seek summary judgment on the amount of damages. Because the amount of damages is the only issue remaining open, a referral to a magistrate judge for a settlement conference is a good next step. Potential statutory damages under the FCRA range from $100 to $1,000 per plaintiff. 15 U.S.C. § 1681n(a)(1)(A); *see also Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 722 (9th Cir. 2010). The parties should have a fairly precise count of the class members. *See* Dkt. No. 87 (directing production of updated class list). With this information, the lower and upper boundaries of damages are readily ascertainable, leaving considerable room in between for a compromise that would relieve the need for further disputed proceedings, or possibly a trial.[2]

---

[2] For example, DMG has indicated that there are "668 class members." Dkt. No. 106 at 2. That would set a statutory damages range of $66,800 to $668,000. Earlier, plaintiffs had indicated that there were 1,138 class members. Dkt. No. 94-1 at 14. That would set the range at $113,800 to $1,138,000.

7

The case is referred to Magistrate Judge Hixson for a settlement conference. All remaining pretrial and trial dates are vacated, and the case is administratively closed pending further order.

Plaintiffs' request for sanctions under 28 U.S.C. § 1927 for re-litigating the standing issue, Dkt. No. 103 at 8-9, is denied. While DMG's reliance on *Ruiz* was misplaced, the Court cannot say that it was so frivolous or unreasonable as to warrant sanctions. *See Stone Creek, Inc. v. Omnia Italian Design*, Inc., 875 F.3d 426, 442 (9th Cir. 2017).

**IT IS SO ORDERED.**

Dated: March 31, 2021

JAMES DONATO
United States District Judge