UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN ARNOLD, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DMG MORI USA, INC.,<br><br>Defendant. | Case No. 18-cv-02373-JD<br><br>**ORDER RE FINAL APPROVAL AND ATTORNEYS' FEES** |

This is a consumer class action alleging that defendant DMG Mori USA accessed the consumer reports of prospective employees using an authorization form that violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681 *et seq.* Dkt. No. 75 at 1.

After more than three years of litigation, which included class certification and summary judgment for plaintiffs on DMG's liability under the FCRA, the parties signed a settlement agreement in July 2021. Dkt. Nos. 75, 113, 118. The Court approved the proposed class settlement on a preliminary basis after holding a hearing. Dkt. Nos. 122, 123. The conditionally certified settlement class consists of "all persons residing in the United States for whom DMG procured or caused to be procured a customer report for employment purposes on or after April 19, 2016, to May 21, 2021." Dkt. No. 123 at 2. The Court appointed named plaintiff Steven Arnold as class representative, and Aashish Desai and Adrianne De Castro of Desai Law Firm, P.C., as class counsel. *Id.*

Plaintiffs filed a motion for final approval of the class settlement and a motion for attorneys' fees and costs. Dkt. Nos. 124, 125. The Court denied the motion for attorneys' fees and costs, and deferred consideration of the motion for final approval. Dkt. No. 133. Plaintiffs filed a renewed motion for attorneys' fees and costs. Dkt. No. 134. The motions are unopposed.

This order resolves the motion for final approval, the motions for attorneys' fees and costs, and the request for an incentive award for Arnold. Dkt. Nos. 124, 125, 134. Final approval is granted, and the requested fees and costs are granted, albeit with several caveats. Arnold is granted an incentive award of $1,500.

## DISCUSSION

### I. FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the claims of a certified class may be settled only with the Court's approval. Rule 23(e) outlines the procedures that apply to the proposed class settlement, including the requirement to direct notice in a reasonable manner to all class members who would be bound by the proposal. Fed. R. Civ. P. 23(e)(1); *see also Norcia v. Samsung Telecomms. Am., LLC*, 14-cv-00582-JD, 2021 WL 3053018, at *1 (N.D. Cal. July 20, 2021).

Under Rule 23(e)(2), the Court may approve a proposal that would bind class members "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>   (i) the costs, risks, and delay of trial and appeal;
>   (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>   (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other."

Fed. R. Civ. P. 23(e)(2).

In addition, our circuit has determined that "[t]he factors in a court's fairness assessment will naturally vary from case to case, but courts generally must weigh: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement;

2

1  (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and
2  views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class
3  members of the proposed settlement." *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d
4  935, 946 (9th Cir. 2011) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir.
5  2004)).

6  As discussed in the preliminary approval order, the Court certified a class of "all persons residing in the United States for whom DMG procured or caused to be procured a consumer report for employment purposes on or after April 19, 2016." Dkt. No. 123 at 2. The parties proposed to modify this definition for settlement purposes by adding an end date of May 21, 2021. *Id.* The Court accepted the proposed modification in its preliminary approval order, *id.*, and again confirms certification of the proposed settlement class under Rule 23(a) and Rule 23(b)(3).

On the Rule 23(e)(1) notice requirement, the Court approved the content and form of the parties' proposed notice upon correction of a typographical error. *Id.* The Court also approved the proposed notice process through which the settlement administrator would mail the notice to each settlement class member identified from DMG's records. *Id.* The administrator mailed notices to 740 settlement class members. Dkt. No. 125-1 at 7. Eleven mailings were returned as undeliverable. *Id.* Given that 729 class members (over 98% of the class) were mailed notice, the Court finds that all of this provided notice in the best practicable manner to class members who will be bound by the proposed settlement. Fed. R. Civ. P. 23(e)(1).

For the Rule 23(e)(2) and *Churchill Village* factors, the class representative and class counsel have adequately performed those roles. The record indicates that the parties participated in two days of private mediation, Dkt. No. 125-1 at 10-11, and ultimately reached a settlement in principle after a full-day conference facilitated by a magistrate judge. Dkt. No. 117. The parties executed a settlement agreement after subsequent negotiations. *See* Dkt. No. 125-1 at 10-11; Dkt. No. 118. This record establishes that the settlement agreement was negotiated at arm's length, which weighs in favor of final approval.

In granting preliminary approval, the Court concluded that the settlement agreement was fair, reasonable, and adequate, and in the best interests of the settlement class. Dkt. No. 123 at 1-2. Nothing in the final approval materials changes the analysis on that score.

For the adequacy of relief, the settlement agreement provides for a settlement of $825,000 to be funded by DMG. Dkt. No. 124-3 ¶ 12. The parties have agreed to divide the $825,000 into two separate funds: a class distribution fund of $375,000, and an attorneys fees' fund of $450,000. *Id.* Attorneys' costs, administration costs, and incentive awards will be paid from the class distribution fund. *Id.* ¶ 35. Any reduction of the attorneys' fees will be paid into the class distribution fund. *Id.* After attorneys' fees, costs, and the incentive award are paid, the remaining class distribution funds will be distributed to the settlement class *pro rata*. *Id.* ¶ 36. With attorneys' fees of $450,000, litigation costs of $13,011.56, administration costs of approximately $13,500, and an incentive award of $1,500, each class member will receive approximately $469.54. Dkt. No. 125-1 at 12.

Plaintiffs are entitled to statutory damages of $100 to $1,000 under the FCRA. 15 U.S.C. § 1681n(a)(1)(A). The individual payments of approximately $469.54 are well within this range, and higher than the norm for FCRA class settlements in this District. *See, e.g., Taafua v. Quantum Global Techs., LLC*, No. 18-cv-06602-VKD, 2021 WL 579862, at *6 (N.D. Cal. Feb. 16, 2021) (average of $107.10 per class member); *In re Uber FCRA Litig.*, No. 14-cv-05200-EMC, 2018 WL 2047362, at *6 (N.D. Cal. May 2, 2018) ($32.15 to $73.99 per class member); *Patel v. Trans Union, LLC*, No. 14-cv-00522-LB, 2018 WL 1258194, at *5 (N.D. Cal. Mar. 11, 2018) ($400 per class member).

Even so, the fact that the proposed attorneys' fees award exceeds the total payment to the class gives pause. This is an inversion of the fees and recovery relationship in most class actions, and while not necessarily fatal, it raises a yellow flag calling for a good explanation. The issue is taken up in the ensuing fees section.

Although plaintiffs' success at summary judgment might have spurred them to seek a recovery at the higher end of the statutory range, they say the proposed recovery is reasonable because unsettled issues of standing under the FCRA and the risk of protracted litigation regarding

4

the appropriate amount of statutory damages posed risks to their case.  Dkt. No. 125-1 at 13-14.  A decision on standing under the FCRA in *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190 (2021) was pending while the parties mediated and attended the settlement conference.  *See* Dkt. No. 125-1 at 13-14; Dkt. No. 117.  On this record, the Court finds that the relief provided by the settlement is adequate and fair.

The Court finds no issues with the proposed treatment of class members relative to each other, subject to the incentive award modification discussed below.  The settlement funds will be distributed on a *pro rata* basis to the 739 settlement class members who did not opt out of the settlement, and any unclaimed settlement funds will be redistributed *pro rata* to the settlement class members who cashed their checks.  Dkt. No. 125-1 at 16.

The reaction of the class members also favors final approval.  Out of the 740 settlement class members who were sent notice, there were no objections and only one opt-out.  *Id.*

## II.     MOTION FOR ATTORNEYS' FEES AND COSTS

Reasonable attorneys' fees and costs are allowed under the FCRA, 15 U.S.C. § 1681n(a)(3), and Federal Rule of Civil Procedure 23(h).  Use of the lodestar method is appropriate to calculate attorneys' fees under a federal fee-shifting statute like the FCRA.  *See Tahara v. Matson Terminals, Inc.*, 511 F.3d 950, 955 (9th Cir. 2007); *see also Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003); *Yeagley v. Wells Fargo & Co.*, 365 F. App'x 886, 887 (9th Cir. 2010) (unpublished) ("Under a fee shifting statute such as the FCRA … the lodestar method is generally the correct method for calculating attorneys' fees.").

The lodestar method requires the Court to multiply the number of hours reasonably expended on the litigation by a reasonable hourly rate.  *Tahara*, 511 F.3d at 955; *see also Hensley v. Eckerhart*, 461 U.S. 424, 432 (1983).  The party seeking fees bears the burden of demonstrating the hours expended in the litigation and must submit evidence supporting those hours and the rates claimed.  *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007).  The Court may exclude any billing entries that are "excessive, redundant, or otherwise unnecessary." *Id.* at 946 (quoting *Hensley*, 461 U.S. at 434).  In addition to determining the reasonable number of hours, the Court must determine a reasonable hourly rate by "considering the experience, skill, and

5

1    reputation of the attorney requesting fees." *Id.* (quoting *Chalmers v. City of Los Angeles*, 796 F.2d

2    1205, 1210 (9th Cir. 1986)). Counsel may rely upon their own declarations, fee awards in other

3    cases, and declarations of other attorneys to prove the reasonableness of their rates. *Id.* at 947.

4          Plaintiffs ask for $450,000 in attorneys' fees to be paid out of the attorneys' fees fund,

5    which is the maximum amount provided for in the settlement agreement, plus $13,011.56 in

6    expenses to be paid out of the class distribution fund. Dkt. No. 134 at 9. Class counsel states that

7    there were 406.5 hours billed by Desai at a rate of $950 per hour, 172 hours by De Castro at a rate

8    of $550 per hour, and 34.3 hours by a paralegal at a rate of $250 per hour. Dkt. No. 124-5 at 20-

9    21. This amounts to a lodestar of $489,350 based on 612.8 total hours.[1]

10         The Court denied the initial motion for attorneys' fees as deficient on several grounds. *See*

11   Dkt. No. 133. The claimed billing rates were not supported by declarations or other

12   documentation, and the motion did not explain why applying 2021 rates for all billing entries

13   going back to 2018 would be reasonable. *Id.* The motion also did not explain why it would be

14   reasonable for the attorneys' fees award to exceed the $375,000 recovery for the settlement class.

15   *Id.* Plaintiffs filed a renewed motion addressing each of these concerns. *See* Dkt. No. 134.

16         The record indicates that counsel billed a reasonable number of work hours. A few time

17   entries did not necessarily justify the hours billed, such as 2.7 hours of partner time for "analysis

18   of appointment of magistrate Joe Spero" and 3 hours of partner time for "research re federal courts

19   and obtaining contact information." Dkt. No. 124-5 at 1, 5. The fact that the partner's hours

20   dwarf those of the senior associate also suggests that the work might have been performed more

21   efficiently. *See id.* at 20-21. But none of the billing entries are "excessive, redundant, or

22   otherwise unnecessary." *See Hensley*, 461 U.S. at 434. Moreover, although somewhat on the high

---

[1] Plaintiffs calculate the lodestar as $489,321.43 based on 612.7 total hours billed. *See* Dkt. No. 134 at 5; Dkt. No. 124-5 at 20-21. But multiplying the billing rates by the total hours reflected in class counsel's billing records leads to a different result. 406.5 hours billed by Mr. Desai at $950 per hour amounts to $386,175.00--not $386.143.37, as class counsel's records state. *See* Dkt. No. 124-5 at 20-21. The same goes for the hours billed by Ms. De Castro and by the paralegal. 172 total hours at an hourly rate of $550 amounts to $94,600.00, not $94,615,57. *See id.* And 34.3 hours at an hourly rate of $250 equals $8,575.00, not $8,562.50. *See id.* Plaintiffs did not explain whether these discrepancies were due to rounding, discounts, or some other adjustment. Consequently, the Court will treat the discrepancies as clerical errors, and deems the lodestar to be $489,350.00.

side, the total number of hours billed is reasonable in light of the multiple discovery disputes and motions briefed in this case.

The renewed motion provided adequate evidence to support the reasonableness of the claimed attorney billing rates. Plaintiffs submitted declarations of three other attorneys who have practiced employment and class action litigation in the Northern District. *See* Dkt. Nos. 134-2, 134-3, 134-4. All attest that the $950 and $550 hourly billing rates claimed by class counsel are reasonable and within the range of current rates charged by attorneys in this District with similar skills, qualifications, reputations, and experience. *See id.* The renewed motion also compares class counsel's claimed billing rates with the rates approved for attorneys of similar qualifications and experience in other cases. *See* Dkt. No. 134 at 7; *see also Welch*, 480 F.3d at 946 ("[B]illing rates should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity.") (internal quotations omitted). The claimed 2021 billing rates of $950 and $550 are in line with prevailing market rates in this District, and so are reasonable. *See Welch*, 480 F.3d at 947.

For the use of 2021 hourly rates for all billing entries, counsel says this is compensation "for having to wait for payment while advancing all the costs of litigation while foregoing other potential opportunities." Dkt. No. 134 at 7. The earliest billing entries date back to April 2018, with the bulk of the entries occurring in 2019 and 2020. *See* Dkt. No. 124-5. It is the true that the Court may apply current rates to historical billing entries to compensate for delays in payment. *See Welch*, 480 F.3d at 947 ("District courts have the discretion to compensate plaintiff's attorneys for a delay in payment by either applying the attorneys' current rates to all hours billed during the course of the litigation or using the attorneys' historical rates and adding a prime rate enhancement."); *see also Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1174 (C.D. Cal. 2010) ("To account for delay in payment from time of billing to time of award, the Court may augment an award based on historical billing rates, plus interest for the delay, or adjust the award by using current billing rates.").

7

1   An argument can be made that cases awarding current rates for all billing entries involved circumstances not present here, and that the ostensible delay here was hardly egregious. This was also not a particularly difficult case, factually or legally. Even so, and in the interest of getting the recovery into the class members' hands and not dragging this litigation out further, the Court reluctantly approves the use of the 2021 rates, and finds that the lodestar is $489,350 based on 612.8 hours of work billed at class counsel's 2021 rates. It bears emphasis that this is a case-specific determination, and the conclusion reached here is not by any means a guideline for other cases.

The same goes for the disparity between the attorneys' fees and the recovery to the class. It is an extremely rare day when the Court will approve a settlement where the lawyers get more money than the victims. The Court does so here mainly because a substantial number of other district courts have determined that the disparity is driven by the unique properties of FCRA actions. *See, e.g., Syed v. M-I LLC*, No. 1:14-cv-00742 WBS BAM, 2019 WL 3564467, at *8 (E.D. Cal. Aug. 6, 2019) (approving award of $299,809 in attorneys' fees out of $556,000 gross settlement); *Lopez v. CIT Bank, N.A.*, No. 15-cv-00759-BLF, 2016 WL 3163175, at *9 (N.D. Cal. June 7, 2016) (granting $78,795 in attorneys' fees vis-à-vis a $50,000 class recovery).

While the amount of damages is relevant to the amount of attorneys' fees awarded, "it is only one of several factors that a court must consider in determining the fee award." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1033 (9th Cir. 2012) (citing *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986)). The fees requested here are lower than the lodestar. Consequently, the Court will not deny final approval of the settlement or the fees request because of the lack of proportionality with the class recovery. This too is a case-specific determination that is not necessarily relevant to other cases.

Litigation expenses in the amount of $13,011.56 were reasonably explained in the declaration of counsel. *See* Dkt. No. 124-6. The requested reimbursement is granted, and the settlement administrator's requested costs of up to $13,500 are also granted. Dkt. No. 125-1 at 5-6.

### III. INCENTIVE AWARD

"Incentive awards" have become a standard feature in class actions, *see Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009), but they are not provided for in Rule 23. If anything, Rule 23(e) casts doubt on the routine approval of awards that give named plaintiffs substantially greater recoveries than other class members. *See* Rule 23(e)(2)(D) (requiring that settlement "treats class members equitably relative to each other."). Oversized payments to named plaintiffs may indicate a collusive settlement to the detriment of unnamed class members.

Consequently, there needs to be a good reason why a named plaintiff should get a much higher payment than other class members. That is missing here. Plaintiffs initially asked for a $5,000 incentive award for named plaintiff Arnold, which they reduced to $3,000 in the renewed application. Dkt. No. 134 at 9. It may be that Arnold put some work into the case, but the record does not demonstrate that he is entitled to a payment more than six times larger than the estimated payment to every other class member. *See* Dkt. No. 124-8. The Court consequently awards $1,500 to Arnold.

### CONCLUSION

Final approval of the class action settlement is granted. The single opt-out is ordered excluded from the settlement.

Class counsel is awarded $450,000 in attorneys' fees to be paid from the attorneys' fees fund. Class counsel is ordered reimbursed $13,011.56 in litigation expenses to be paid from the class distribution fund. The settlement administrator is awarded additional costs of up to $13,500. The named class representative, Steven Arnold, is awarded a $1,500 incentive payment.

The case will remain closed, but counsel must file the post-distribution accounting document on the ECF docket when the time comes, as required by the Northern District's Procedural Guidance for Class Action Settlements.

**IT IS SO ORDERED.**

Dated: December 30, 2022

_____
JAMES DONATO
United States District Judge